1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TUCK BECKSTOFFER WINES LLC,

            Plaintiff,                                    No. C 09-3881 PJH

      v.                                                      **ORDER**

ULTIMATE DISTRIBUTORS, INC.,

            Defendant.
_____/

      The motion of plaintiff and counterdefendant Tuck Beckstoffer Wines LLC ("TB

Wines") to strike certain counterclaims asserted by defendant and counterclaimant Ultimate

Distributors, Inc. ("Ultimate") came on for hearing before this court on December 9, 2009.

TB Wines appeared by its counsel James P. Martin, and Ultimate appeared by its counsel

Marc C. Reidel.  Having read the parties' papers and carefully considered their arguments,

and good cause appearing, the court hereby GRANTS the motion.

                                    **BACKGROUND**

      The dispute in this action involves the wholesale wine distributor relationship

between Ultimate and TB Wines.  TB Wines (formerly known as the "Seventy Five Wine

Company") is a winery based in St. Helena, California, which produces, custom crushes,

and bottles wine under several different labels, and sells and markets those wines

throughout the United States, including in Georgia.  TB Wines is owned by A. Tuck

Beckstoffer ("Beckstoffer").  Ultimate is a wholesale distributor of wines, beers, and other

alcoholic beverages in the State of Georgia.  In 2006, TB Wines selected Ultimate to be its

Georgia wholesaler.

**United States District Court**
For the Northern District of California

1    In order for an out-of-state wine producer to sell its wines in the State of Georgia, it

2 is required to register its brands with the Georgia Department of Revenue ("the

3 Department"), and to designate a licensed wholesale distributor (or "wholesaler") for each

4 territory, as the exclusive distributor of the brand in that territory.

5    Georgia law further requires that once a winemaker enters into a wholesale

6 distributor relationship with a Georgia wholesaler, it may change wholesalers only by

7 withdrawing its brands from distribution in the state for a period of four years, or by making

8 a showing of cause before the Commissioner of the Georgia Department of Revenue.  The

9 Commissioner is authorized by statute to determine whether cause exists.

10    In practice, there appear to be at least three methods for changing wholesalers.

11 First, the winemaker can provide a release for the designated wholesaler to sign.  Second,

12 the winemaker can file with the Department a Notice of Intention to Change Wholesalers,

13 and the change will be accomplished if the designated wholesaler does not object within 30

14 days.  If the designated wholesaler files objections within 30 days, however, then the third

15 method comes into play.  After the objections are filed, the Commissioner conducts an

16 administrative hearing, during which the winemaker must show cause why it should be

17 permitted to change distributors.

18    In determining whether cause exists, the Commissioner considers four statutory

19 factors – the wholesaler's bankruptcy or serious financial insolvency (including failure to

20 pay debts when due); the wholesaler's repeated violation of federal or state law; the

21 wholesaler's failure to maintain sales volume of the brand reasonably consistent with the

22 sales volumes of other wholesalers of that brand, or failure to promote the product

23 effectively; and any other factors relevant to the proposed change in wholesalers and which

24 will aid the Commissioner in determining cause.  See Ga. Comp. R. & Regs. R. 560-2-5-

25 .02.

26    TB Wines alleges that prior to the parties' entering into the distributorship

27 agreement, Susan Owens ("Owens"), owner and President of Ultimate, induced TB Wines

28 to retain Ultimate by agreeing to provide a voluntary release letter that would allow TB

**United States District Court**
For the Northern District of California

1   Wines (then Seventy Five Wine Co.) to terminate Ultimate on 60 days' notice without

2   showing cause.  TB Wines claims that on November 17, 2008, when Beckstoffer was

3   transitioning two of his wine brands from the Seventy Five Wine Co. to TB Wines, Ultimate

4   gave TB Wines a second signed release.  This second release was allegedly identical to

5   the first release, and purported to allow TB Wines to terminate its distributor relationship

6   with Ultimate on 60 days' notice.

7       On June 24, 2009, TB Wines provided Ultimate with 60 days' written notice of the

8   termination of the supplier-wholesaler relationship, by submitting a Notice of Termination,

9   pursuant to the November 17, 2008 release given by Ultimate to TB Wines.  TB Wines

10  asserts, however, that Ultimate claimed that the release letter did not allow TB Wines to

11  terminate without cause, that Ultimate rarely issued such release letters, and that the letter

12  was a forgery.

13      On July 7, 2009, Ultimate notified the Department that it disputed TB Wines' right to

14  terminate Ultimate as its wholesaler in Georgia.  Because Ultimate disputed the purported

15  termination, the Department required TB Wines to file a Notice of Intention to Change

16  Wholesalers to show cause to terminate the supplier-wholesaler relationship.  On July 17,

17  2009, TB Wines filed a Notice of Intention to Change Wholesalers from Ultimate to

18  Chalkboard Distributors, Inc. d/b/a Prime Wine & Spirits ("Chalkboard").  On July 30, 2009,

19  Ultimate filed an objection to TB Wines' Notice of Intent to Change Wholesalers.

20      In response to Ultimate's objection, the Department scheduled a hearing to

21  determine whether cause existed.  TB Wines asserts that in order to prepare for the

22  hearing, it conducted a factual investigation, serving discovery requests and seeking public

23  records from the Department.  TB Wines also interviewed witnesses, including individuals

24  at similarly-situated wineries that had received releases from Ultimate that were identical to

25  the ones received by TB Wines, and who confirmed TB Wines' understanding regarding

26  termination without cause.  Some of those individuals were identified at the pre-hearing

27  conference as potential witnesses for the administrative hearing, but TB Wines states that it

28  subsequently obtained copies of the release letters and written affidavits from the winery

United States District Court

For the Northern District of California

1   witnesses in lieu of live testimony.

2          TB Wines also requested that the Hearing Officer issue subpoenas for potential

3   witnesses, pursuant to Ga. Comp. R. & Regs. R. 560-2-9-.08, under which either party to

4   an administrative proceeding before the Department "may obtain subpoena forms from the

5   Hearing Officer by making a timely request for same."  The Hearing Officer is authorized to

6   issue administrative subpoenas pursuant to O.C.G.A. §§ 48-2-8 and 50-13-13.

7          According to a declaration provided by TB Wines' Georgia counsel, administrative

8   subpoenas were served on behalf of TB Wines only to Chalkboard, Kaplan, Owens, and

9   three other Ultimate employees – Teresa Guthrie, Matthew Nathan, and Ryan Stanton.

10  None of the winery witnesses identified by TB Wines at the pre-hearing conference were

11  served with administrative subpoenas.

12         TB Wines alleges that shortly after it informed Ultimate of its intent to change

13  distributors, Ultimate began informing buyers of TB Wines' products that TB Wines could

14  not fulfill its orders, that Ultimate had no more wine in inventory, and that buyers should

15  switch brands in any case because the quality of TB Wines' products had deteriorated.  TB

16  Wines asserts that it learned of this when it spoke to some of the accounts that had

17  purchased TB Wines' products.

18         TB Wines filed this action against Ultimate on July 29, 2009, in the Superior Court of

19  California, County of Napa, alleging five state law claims – intentional misrepresentation,

20  breach of contract, breach of the implied covenant of good faith and fair dealing, trade libel,

21  and intentional interference with prospective economic relations.  TB Wines seeks

22  damages, injunctive relief, and other remedies that are unavailable in the Georgia

23  administrative action.

24         Ultimate removed the case on August 24, 2009, alleging diversity jurisdiction.

25  On September 21, 2009, Ultimate filed an answer and counterclaims against TB Wines,

26  Chalkboard, and Jay Kaplan ("Kaplan").[1]

27  _____

28         [1]  Kaplan is a principal of Chalkboard.  Until December 2008, he was either General
     Manager or Sales Manager of Ultimate.

United States District Court

For the Northern District of California

1   Ultimate alleges that TB Wines' purpose in filing the present action and serving the

2   subpoenas in the Georgia proceeding was to make Ultimate's clients and customers aware

3   of the allegations regarding Ultimate's conduct, and the reasons that TB Wines was

4   seeking to terminate Ultimate.  In addition, Ultimate claims that the subpoenas were issued

5   with an ulterior motive of harassing Ultimate's clients and insinuating false information

6   about Ultimate's business practices.

7   Ultimate asserts seven counterclaims – first, unfair competition, in violation of

8   California Business & Professions Code § 17200, against TB Wines, Chalkboard, and

9   Kaplan; second, breach of settlement agreement, against Chalkboard and Kaplan; third,

10  breach of distribution agreement, against TB Wines; fourth, statutory unfair competition

11  (statutory basis not specified), against TB Wines, Chalkboard, and Kaplan; fifth, abuse of

12  process, against TB Wines; sixth, intentional interference with contractual relations, against

13  TB Wines, Chalkboard, and Kaplan; and seventh, intentional interference with prospective

14  business advantage, against TB Wines, Chalkboard, and Kaplan.[2]

15  On October 23, 2009, TB Wines filed the present special motion to strike the first,

16  fourth, fifth, sixth, and seventh counterclaims pursuant to California Code of Civil Procedure

17  § 425.16 (the anti-SLAPP statute).  In the alternative, TB Wines seeks an order dismissing

18  those counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state

19  a claim.[3]

20  Meanwhile, on October 1 and 2, 2009, the Department held the hearing into the

21

22      [2]  At some point after Kaplan left Ultimate, Ultimate sued Kaplan and Chalkboard in
    Georgia, alleging causes of action for theft of trade secrets, conversion, breach of fiduciary
23  duty, interference with contract, and defamation.  The lawsuit settled in May 2009 (before TB
    Wines filed the present action), and Ultimate claims that as part of the settlement, Kaplan and
24  Chalkboard agreed not to disparage Ultimate's business.  The basis alleged for Ultimate's
    counterclaim for breach of settlement agreement against Kaplan and Chalkboard is that
25  shortly after the parties settled the Georgia case, Kaplan and Chalkboard "reignited" their
    campaign to disparage Ultimate's business to its restaurant and retail customers in Georgia,
26  and, with the assistance of TB Wines, to attack Ultimate's California winery clients.  For their
    part, Chalkboard and Kaplan have filed counterclaims against Ultimate, alleging breach of the
27  settlement agreement and intentional interference with business relations.

28      [3]  On December 9, 2009, Chalkboard and Kaplan filed a notice of joinder in TB Wines'
    motion.

5

United States District Court

For the Northern District of California

1  dispute between TB Wines and Ultimate.  In an Executive Order dated December 23, 2009,

2  the Commissioner found that TB Wines had established sufficient cause to change its

3  designated wholesaler under the provisions of O.C.G.A. § 3-6-22(c) and Revenue

4  Regulation 560-2-5-.02.  On January 8, 2010, Ultimate filed a motion for reconsideration.

5                                    **DISCUSSION**

6  A.    Legal Standards

7         1.    Special Motions to Strike (Anti-SLAPP)

8         California authorizes what is known as a special motion to strike "Strategic Litigation

9  Against Public Participation" or "SLAPP" suits.  SLAPP suits "masquerade as ordinary

10 lawsuits but are brought to deter common citizens from exercising their political or legal

11 rights or to punish them for doing so."  Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003)

12 (quotations omitted).

13        In enacting California's anti-SLAPP statute, the Legislature found a "disturbing

14 increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of

15 freedom of speech and petition for redress of grievances."  Cal. Civ. P. Code § 425.16(a).

16 Because "it is in the public interest to encourage continued participation in matters of public

17 significance, and [because] this participation should not be chilled through abuse of the

18 judicial process," the anti-SLAPP statute is to be construed broadly.  Id.

19        The statute provides that

20        [a] cause of action against a person arising from any act of that person in
          furtherance of the person's right of petition or free speech under the United
21        States Constitution or the California Constitution in connection with a public
          issue shall be subject to a special motion to strike, unless the court
22        determines that the plaintiff has established that there is a probability that the
          plaintiff will prevail on the claim.
23
24 Cal. Civ. P. Code § 425.16(b)(1).  If the special motion to strike is granted, the defendant is

   entitled to recover attorney's fees and costs (with certain exceptions not applicable here).
25
   Cal. Civ. P. Code § 425.16(c); see also Verizon Delaware, Inc. v. Covad Comm'cns Co.,
26
   377 F.3d 1081, 1091 (9th Cir. 2004).
27
28        The reference in subsection (b)(1) to an "act in furtherance of a person's right of

                                         6

United States District Court

For the Northern District of California

1   petition or free speech under the United States Constitution or the California Constitution in

2   connection with a public issue" includes

> (1) any written or oral statement or writing made before a legislative,
> executive, or judicial proceeding, or any other official proceeding authorized
> by law; (2) any written or oral statement or writing made in connection with an
> issue under consideration or review by a legislative, executive, or judicial
> body, or any other official proceeding authorized by law; (3) any written or oral
> statement or writing made in a place open to the public or a public forum in
> connection with an issue of public interest; (4) or any other conduct in
> furtherance of the exercise of the constitutional right of petition or the
> constitutional right of free speech in connection with a public issue or an issue
> of public interest.

9   Cal. Civ. P. Code § 425.16(e).

10      In considering an anti-SLAPP motion, the court must ask, first, whether the suit

11  arises from the defendant's protected conduct; and, second, whether the plaintiff has

12  shown a probability of success on the merits.  Only a cause of action that satisfies both

13  prongs of the anti-SLAPP statute is subject to being stricken under the statute.  Navellier v.

14  Sletten, 29 Cal. 4th 82, 89 (2002).

15      Under the first inquiry, the court must determine whether the defendant has made a

16  threshold showing that the challenged cause of action is one "arising from" protected

17  activity as defined in § 425.16.  In re Episcopal Church Cases, 45 Cal. 4th 467, 477, cert.

18  denied, 130 S.Ct. 179 (2009).  That is, the court must decide whether the defendant has

19  shown that the act or acts of which the plaintiff complains were taken "'in furtherance of the

20  [defendant]'s right of petition or free speech under the United States or California

21  Constitution in connection with a public issue,' as defined in subsection (e) of the statute."

22  Equilon Enters., LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002) (quoting Cal. Civ.

23  P. Code § 425.16(b)).

24      If the court finds that such a showing has been made, it then must consider whether

25  the plaintiff has demonstrated a probability of prevailing on the claim.  Episcopal Cases, 45

26  Cal. 4th at 477.  That is, the court must determine whether "the complaint is both legally

27  sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

28  judgment if the evidence submitted by the plaintiff is credited."  Navellier, 29 Cal. 4th at 88-

1   89 (citations and quotations omitted).

2       "[T]hough the court does not weigh the credibility or comparative probative strength

3   of competing evidence, it should grant the motion if, as a matter of law, the defendant's

4   evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary

5   support for the claim." Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 821 (2002);

6   see also Cal. Civ. P. Code § 425.16(b)(2).

7       2.      Motions to Dismiss (12(b)(6))

8       A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

9   alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

10  Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen.

11  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for

12  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

13  requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the

14  complaint include a "short and plain statement of the claim showing that the pleader is

15  entitled to relief." Fed. R. Civ. P. 8(a)(2).

16      Specific facts are unnecessary – the statement need only give the defendant "fair

17  notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89,

18  93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations

19  of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the

20  grounds of his entitlement to relief "requires more than labels and conclusions, and a

21  formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 550 U.S.

22  at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be

23  enough to raise a right to relief above the speculative level." Id.

24      A motion to dismiss should be granted if the complaint does not proffer enough facts

25  to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-

26  pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

27  the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

28  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (9th Cir. 2009).

**United States District Court**
For the Northern District of California

B.    TB Wines' Motion

TB Wines argues that the court should strike the first, fourth, fifth, sixth, and seventh counterclaims under the anti-SLAPP statute because they arise from TB Wines' protected conduct, and because Ultimate cannot show a probability of prevailing on the counterclaims.  Ultimate contends that TB Wines' motion should be denied based on the "commercial speech" or "conduct" exception to the anti-SLAPP statute; that the counterclaims do not arise from TB Wines protected conduct, and that any allegations of protected conduct are only incidental to the counterclaims; and that each of the disputed counterclaims is legally sufficient and is supported by a prima facie showing of facts.

1.    Whether the "commercial speech" or "conduct" exception applies

As an initial matter, the court considers Ultimate's argument that TB Wines' motion to strike should be denied based on the "commercial speech" or "conduct" exception.  The anti-SLAPP statute provides that it

> does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if <u>both</u> of the following conditions exist:
>
> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
>
> (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation

with an exception not applicable here.  Cal. Code Civ. P. § 425.17(c) (emphasis added).

Section 425.17 was intended to apply to cases against a business arising out of its commercial speech or conduct.  Brill Media Co., LLC v. TCW Group, Inc., 132 Cal. App. 4th 324, 342 (2005), and the party moving to strike under the anti-SLAPP statute bears the burden of establishing § 425.17 does not apply.

Here, Ultimate asserts that its counterclaims are based on statements made by TB

United States District Court

For the Northern District of California

1    Wines to Ultimate's retail customers in Georgia, and statements made by TB Wines to

2    Ultimate's California winery clients.  Ultimate contends that because each of these

3    categories arises from commercial speech or commercial conduct, each is exempt, under

4    § 425.17 from the reach of the anti-SLAPP statute.  Ultimate claims that the statements

5    constitute representations about Ultimate's products and business, and that they occurred

6    in connection with a commercial transaction – i.e., "for the purpose of . . . promoting, or

7    securing sales of the [defendant's] goods."  Cal. Civ. P. Code § 425.17(c).

8         Ultimate asserts that <u>Brill Media</u> is controlling here.  In that case, 74 media-related

9    companies filed suit against 16 defendants, including owners of bonds issued by two of the

10    plaintiff media companies, and a number of large financial conglomerates and asset

11    management companies, alleging causes of action regarding efforts by the defendants to

12    force a default or restructuring, and to take control of the plaintiffs' assets, including radio

13    stations.

14         The media companies sought to sell assets to a third party to enable them to make

15    an interest payment on the bonds.  However, the defendants would have made more

16    money if the media companies defaulted on the bonds because the defendants could

17    purchase (in exchange) the assets of the media companies.

18         Some of the defendants had previously filed an involuntary bankruptcy petition,

19    seeking to dissolve the media companies.  In addition, in the course of attempting to work

20    out the media companies' financial problems, the parties had entered into confidentiality

21    agreements.  In the lawsuit, the media companies alleged that the defendants had

22    breached the confidentiality agreements in order to advance their financial self-interest by

23    forcing the media companies into default and liquidation.

24         The defendants then filed an anti-SLAPP motion, arguing that the filing of the

25    involuntary bankruptcy petition was conduct protected by the right of petition.  The court

26    denied the anti-SLAPP motion, finding that the § 425.17 exception applied, as the

27    defendants were primarily engaged in the business of selling goods and services, including

28    securities and financial instruments, and the challenged statements and conduct (relating to

United States District Court

For the Northern District of California

1    the effort to secure control of the media companies) were made in the course of delivering

2    their goods or services.  Id., 132 Cal App. 4th at 340-42.

3          Here, Ultimate argues that all the allegations in the counterclaims involve

4    unprotected commercial speech, including the statements or conduct in the Georgia

5    administrative proceeding, and in the present action – both of which proceedings Ultimate

6    claims are closely analogous to the involuntary bankruptcy proceeding in the Brill

7    Media case.

8          Ultimate asserts that TB Wines stood to make more money by "converting"

9    Ultimate's business to Chalkboard through the unlawful activity alleged in Ultimate's

10   counterclaims.  Ultimate claims that TB Wines and Chalkboard falsely informed Ultimate's

11   retail customers that Ultimate had been terminated as TB Wines' distributor and generally

12   disparaged Ultimate's financial condition, financial performance, and business ethics.

13   Ultimate refers to TB Wines' issuance of the subpoenas as "pretextual," claiming that the

14   real purpose was to convince the wineries in California not to do business with Ultimate,

15   and to convince them that Ultimate was unethical and would not honor a release form.

16         Ultimate contends, in addition, that the intended audience of TB Wines' commercial

17   speech and conduct were the actual customers of Ultimate, who were also the persons

18   likely to repeat the statements to, or otherwise influence, an actual buyer of TB Wines.

19   Ultimate asserts that TB Wines, in alliance with Kaplan and Chalkboard, made statements

20   disparaging Ultimate's financial condition, financial performance, and business ethics

21   directly to restaurants who purchase TB Wines through Ultimate.

22         The court finds that the § 425.17 exception does not apply.  The record shows that

23   counterdefendant TB Wines is "primarily engaged" in the business of manufacturing and

24   selling wine.  Thus, the first factor is satisfied.  Nevertheless, the commercial speech

25   exception is inapplicable to the counterclaims because § 425.17 applies only to statements

26   that TB Wines may have made about its own products or the products of a competitor, and

27   because Ultimate does not refer to a single statement that TB Wines made about its own

28   products or a competitor's products.  See Cal. Civ. P. § 425.17(c)(1).

United States District Court

For the Northern District of California

1    The decision in <u>Brill Media</u> is not persuasive in this instance, as the court there did

2  not consider the portion of § 425.17(c)(1), which requires that "[t]he statement or conduct

3  consist[ ] of representations of fact about that person's or a business competitor's business

4  operations."  Instead, the <u>Brill</u> court focused on the second portion of subsection (c)(1),

5  ruling that the statements and conduct relating to the defendant bondholders' effort to

6  secure control of the media companies were made in the course of delivering their goods or

7  services, and thus fell within the "commercial speech/conduct" exception.

8    Here, the counterclaims are based on a course of conduct by TB Wines (and the

9  other counterdefendants), which includes statements made as part of TB Wines'

10  investigation connected with the filing of the request to change wholesale distributors (the

11  Georgia administrative proceeding) and its investigation connected with the filing of the

12  present action, plus the actual filing of the administrative request and the present lawsuit.

13    Ultimate is not complaining about statements that TB Wines made about its own

14  operations, goods, or services, or about a business competitor's operations, goods, or

15  services, but rather, about statements that TB Wines made about Ultimate's business

16  operations.  TB Wines is a wine producer located in California, and Ultimate is a wholesale

17  distributor of wines in the State of Georgia.  They are not business competitors.

18    Neither the act of filing the administrative petition nor the act of filing the present

19  lawsuit constitutes "representations of fact about [TB Wines'] or a business competitor's

20  business operations, goods, or services, that is made for the purpose of obtaining approval

21  for, promoting, or securing sales or leases of, or commercial transactions in [TB Wines']

22  goods or services, or the statement or conduct was made in the course of delivering [TB

23  Wines'] goods or services.  <u>See</u> Cal. Civ. P. Code § 425.17(c)(1).

24    Nor, for that matter, is "the intended audience" of the lawsuit or the administrative

25  proceeding an "actual or potential buyer or customer [of TB Wines], or a person likely to

26  repeat the statement to, or otherwise influence, an actual or potential buyer or customer [of

27  TB Wines]."  <u>See</u> Cal. Civ. P. Code § 425.17(c)(2).

28    It appears that Ultimate has incorrectly read § 425.17(c) as requiring that the

United States District Court

For the Northern District of California

statements be representations of fact about its own (rather than TB Wines') business operations, and that the intended audience of the statements be an actual or potential buyer or customer of its own (rather than TB Wines') goods or services.

2.     Whether the disputed counterclaims arise from TB Wines' protected conduct

TB Wines argues that the five counterclaims at issue all arise from TB Wines' protected activity – the filing of present complaint against Ultimate, the service of subpoenas in the Georgia proceeding, and other litigation-related activities.

In order to succeed on this argument, TB Wines must show that the act or acts of which Ultimate complains were taken in furtherance of TB Wines' "right of petition or free speech under the United States or California Constitution in connection with a public issue." Equilon Enters., 29 Cal. 4th at 67.  In addition, however,

> [t]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.  Moreover, that a cause of action arguably may have been "triggered" by protected activity does not entail it is one arising from such. . . . [T]he critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity.

Nevellier, 29 Cal. 4th at 89.

Here, TB Wines contends that its filing of the complaint in this action falls within § 425.16(e)(1) (a "writing made" in a "judicial proceeding"); and that the subpoenas issued in the Georgia administrative proceeding and TB Wines' alleged statements to Ultimate's clients fall within § 425.16(e)(2) (activities conducted in connection with "official proceeding authorized by law").  TB Wines claims that Ultimate's purpose in filing the counterclaims was to retaliate against TB Wines for the filing of the present action and for its quasi-litigation-related activities.

TB Wines notes that all the counterclaims incorporate by reference the allegations in CC ¶¶ 1-25 ("Factual Background"), where Ultimate alleges, among other things, that TB Wines, Chalkboard, and Kaplan "conspired to institute the instant litigation . . . to assert unfounded allegations that have been widely disseminated to Ultimate's other winery, importer and wine supplier clients . . . in California," CC ¶ 13; that TB Wines, Chalkboard,

United States District Court

For the Northern District of California

1  and Kaplan "have systematically contacted existing clients of Ultimate in the California wine

2  industry . . . to assert that the Georgia Administrative Proceeding and TBW's Complaint in

3  this action were instituted because of the allegedly false and bad-faith business practices of

4  Ultimate," CC ¶ 15; and that TB Wines "issued the subpoenas [in the Georgia

5  administrative proceeding] with no genuine intention of enforcing the subpoenas and with

6  the intent to harm Ultimate's relationship with its clients," CC ¶ 17.

7          The first counterclaim for unfair competition in violation of § 17200 alleges that TB

8  Wines, Chalkboard, and Kaplan made "knowing false statements regarding Ultimate's

9  business practices."  CC ¶ 27.  The fourth counterclaim for statutory unfair competition,

10  which appears to be a variation of the first counterclaim, alleges that TB Wines,

11  Chalkboard, and Kaplan "have made false statements and false representations to

12  Ultimate's Clients, as well as its Customers" to the effect that the Georgia administrative

13  proceeding and the present action were instituted as a result of Ultimate's bad faith

14  business practices, that Ultimate has been terminated as the distributor or wholesaler of TB

15  Wines, that Ultimate cannot be trusted to fulfill its business obligations, that Ultimate does

16  not pay its bills on time, and that Ultimate has misused and falsely used releases to obtain

17  business from prospective clients.  CC ¶ 39.

18          TB Wines asserts that the first and fourth counterclaims ("the UCL claims") must be

19  stricken because they rely on statements allegedly made by TB Wines to Ultimate's

20  customers when TB Wines was conducting pre-lawsuit investigation relating to allegations

21  in the complaint; because they arise from TB Wines' alleged interference with contractual

22  relations and prospective business advantage, which are in turn based on the assertion

23  that TB Wines filed this action and served subpoenas in the Georgia administrative

24  proceeding for the purpose of interfering with Ultimate's business relationships; and

25  because they arise from TB Wines' alleged abuse of process by subpoena'ing witnesses to

26  appear in the Georgia administrative proceeding.

27          TB Wines notes that in the Georgia proceeding, the Hearing Officer must determine

28  whether TB Wines had good cause to terminate Ultimate based on its poor sales, its failure

United States District Court

For the Northern District of California

1    to pay its bills on time, and its failure to perform other obligations, and may also consider

2    the issuance of the two releases.  Because all this conduct arises from this litigation and

3    the Georgia administrative proceeding, TB Wines asserts, it is protected activity under the

4    anti-SLAPP statute.

5         The fifth counterclaim for abuse of process alleges that TB Wines "caused the

6    issuance and service of subpoenas on Ultimate's Clients in the Georgia Administrative

7    Proceeding," and that those subpoenas "were issued in a wrongful manner with no actual

8    intent of enforcing the subpoenas or requiring attendance at a GDR hearing," but rather

9    "with an ulterior motive of harassing Ultimate's Clients and insinuating false information

10   about Ultimate's business practices and trustworthiness."  CC ¶ 43.  TB Wines argues that

11   the fifth counterclaim must be stricken because it arises solely from TB Wines' issuance

12   and service of subpoenas, a protected activity under Code of Civil Procedure § 425.16.

13        The sixth counterclaim for intentional interference with contractual relations alleges

14   that TB Wines, Chalkboard, and Kaplan "intended to and did in fact disrupt and burden

15   Ultimate's performance of its contracts with its Clients and Customers" by wrongfully

16   subpoena'ing the clients, by making false statements to Ultimate's clients and customers

17   about the reasons for Ultimate's inability to supply products and its untrustworthiness, and

18   by refusing to supply Ultimate with its requirements of TB Wines' products.  CC ¶ 48.

19        TB Wines argues that the sixth counterclaim must be stricken because the principal

20   thrust of this claim is that TB Wines interfered with Ultimate's relationships with its clients

21   when TB Wines served the subpoenas to the wineries and/or investigated the parties'

22   contentions in the Georgia administrative proceeding – and that this protected conduct

23   allegedly prompted "numerous complaints from Ultimate's Clients and the requests of many

24   of them to terminate their designation of Ultimate as their wholesaler in Georgia," CC ¶ 17;

25   and that the filing of the present lawsuit and the issuance of the subpoenas were part of an

26   alleged conspiracy "to interfere with Ultimate's contracts and prospective business

27   relationships," etc., CC ¶ 21.  TB Wines contends that for the reasons indicated above, the

28   filing of the present lawsuit and the activities conducted in connection with the factual

United States District Court

For the Northern District of California

1    investigation related to this lawsuit and the Georgia administrative proceeding are protected

2    activities under § 425.16.

3        Finally, the seventh counterclaim for intentional interference with prospective

4    business advantage relies on the same purported abuse of process, statements regarding

5    Ultimate, and unfair competition alleged in the prior counterclaims.  See CC ¶ 54.  TB

6    Wines argues that the seventh counterclaim must be stricken for the reasons argued in

7    connection with the first, fourth, fifth, and sixth counterclaims.

8        In response, Ultimate argues that none of the allegations asserted in the

9    counterclaims are protected expression covered by the anti-SLAPP statute, as all the

10   allegations arise from TB Wines' attempts to harm Ultimate's business so that TB Wines

11   could move its business to Chalkboard.

12       Ultimate asserts further that any allegations of protected conduct are only incidental

13   to the claims.  Ultimate contends that TB Wines cannot base an anti-SLAPP motion on

14   allegations of incidental protected conduct, even where the alleged incidental conduct

15   relates to the petitioning of grievances.  Here, Ultimate argues, its allegations revolve

16   predominately around how TB Wines and Ultimate have communicated with suppliers and

17   customers – specifically, that the claims center on (alleged) defamatory statements that TB

18   Wines made to Ultimate's customers and clients, as well as TB Wines' refusal to fill

19   Ultimate's orders.

20       Ultimate asserts that in addition to the allegations regarding what it calls the "judicial

21   events" (the issuance of subpoenas, and the institution of the present action), the

22   counterclaims also allege that TB Wines made false representations to Ultimate's

23   customers in Georgia and to Ultimate's clients in California, both of which occurred before

24   the filing of this lawsuit.

25       Ultimate disputes that what it refers to as the "pretextual subpoenas" form the

26   "gravamen or thrust" of the counterclaims.  Ultimate claims that the allegations relating to

27   TB Wines' improper use of the subpoenas revolves around disparaging statements that TB

28   Wines made about Ultimate to Ultimate's California clients.  According to Ultimate, the

16

United States District Court
For the Northern District of California

1   subpoenas and the phone calls merely served as a "vehicle through which TB Wines could

2   disparage Ultimate, and are not themselves the gravamen of the action."  At bottom,

3   Ultimate claims, the counterclaims are based on a business dispute and have little to do

4   with any protected petitioning activity.

5          The court finds that TB Wines has made a threshold showing that the counterclaims

6   arise from protected activity.  The anti-SLAPP statute protects any act in furtherance of a

7   person's right of petition or free speech, <u>see</u> Cal. Civ. P. Code § 425.16, including, without

8   limitation, the filing of a complaint, the assertion of allegations therein, the service of

9   subpoenas, and any factual investigation related to the issues in dispute.

10         Here, the substance of the counterclaims arises from TB Wines' protected right to

11  petition, as the counterclaims relate generally to TB Wines' litigation and pre-litigation

12  conduct, which is protected activity under § 425.16.  <u>See</u>, <u>e.g.</u>, <u>Navellier</u>, 29 Cal. 4th at 90;

13  <u>Feldman v. 1100 Park Lane Assocs.</u>, 160 Cal. App. 4th 1467, 1479-87 (2008).  Given that

14  each of the counterclaims incorporates by reference all the factual allegations in CC ¶¶ 1-

15  25, and given that the majority of the allegedly disparaging statements are alleged to have

16  been made in the context of investigation of or filing of the present action and the Georgia

17  proceeding, the court is not persuaded that the claims regarding those actions are "merely

18  incidental."

19         It is irrelevant for purposes of the anti-SLAPP statute that Ultimate includes

20  additional allegations in the disputed counterclaims that are unrelated to TB Wines'

21  protected activities. "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through

22  a pleading tactic of combining allegations of protected and unprotected activity under the

23  label of 'one cause of action.'"  <u>Fox Searchlight Pictures, Inc. v. Paladino</u>, 89 Cal. App. 4th

24  294, 308 (2001).  When the pleading alleges facts pertaining to both protected and

25  unprotected activity, "it is the principle thrust or gravamen of the [claim] that determines

26  whether the anti-SLAPP statute applies."  <u>Martinez v. Metabolife Int'l, Inc.</u>, 113 Cal. App.

27  4th 181, 193 (2003), <u>quoted in</u> <u>Episcopal Cases</u>, 45 Cal. 4th at 477.

28         Ultimate does not dispute that if the counterclaims arise from TB Wines' having filed

17

United States District Court

For the Northern District of California

1   the present lawsuit and having filed the petition in Georgia to terminate the distributorship,

2   they can be considered to arise from protected activity.  Ultimate's pleading is not a model

3   of clarity, but the principle thrust or gravamen is clearly a challenge to TB Wines' filing of

4   the present action and the petition in the Georgia administrative proceeding, as well as to

5   actions taken by TB Wines in preparation for litigating those actions.

6        Now, however, Ultimate is attempting to disavow having alleged, for example, that

7   "[i]n furtherance of the scheme to disparage the reputation, services, and business of

8   Ultimate, TBW and Chalkboard conspired to institute the instant litigation both to bring

9   financial pressure to bear on Ultimate . . . and to assert unfounded allegations . . . ," CC

10  ¶ 13; and that TB Wines caused subpoenas to be issued in the administrative proceeding

11  "with no actual intent in enforcing the subpoenas or requiring attendance at a GDR

12  hearing," CC ¶ 43.  Instead, Ultimate argues, the "gravamen" of the counterclaims is that

13  TB Wines made statements to Ultimate's customers in Georgia and winery clients in

14  California disparaging Ultimate's business practices, ethics, and financial responsibility.

15       In deciding whether the underlying acts constitute protected conduct, the court is

16  required to consider "the pleadings, and supporting and opposing affidavits stating the facts

17  upon which the liability or defense is based," Cal. Code Civ. P. § 425.16(b) – not a re-

18  phrasing of the claims that comes in response to an anti-SLAPP motion to strike.

19  Moreover, to the extent that Ultimate is suggesting that it should be permitted to amend its

20  counterclaims to allege alternative facts, the cases hold that a litigant cannot avoid the anti-

21  SLAPP statute by amending its pleadings or disguising earlier assertions.  See, e.g., Salma

22  v. Capon, 161 Cal. App. 4th 1275, 1288-94 (2008).

23       3.    Whether Ultimate has established that it is likely to prevail

24       TB Wines contends that Ultimate cannot meet its burden of showing that it is likely to

25  prevail on the disputed counterclaims.  This inquiry requires a determination of whether "the

26  complaint is both legally sufficient and supported by a sufficient prima facie showing of

27  facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

28  Navellier, 29 Cal. 4th at 88-89.

United States District Court

For the Northern District of California

1    As indicated above, to demonstrate a probability of prevailing on its claims, Ultimate

2    must establish that the counterclaims are both legally sufficient and supported by a

3    sufficient prima facie showing of facts that will sustain a favorable judgment if the evidence

4    submitted by Ultimate is credited.  See Navellier, 29 Cal. 4th at 88-89; Wilson, 28 Cal. 4th

5    at 821.  The motion should be granted if, as a matter of law, TB Wines' evidence supporting

6    the motion defeats Ultimate's attempt to establish evidentiary support for the claim.  See

7    Cal. Civ. P. Code § 425.16(b)(2).

8    TB Wines argues that Ultimate's counterclaims fail because TB Wines' statements in

9    this litigation and in the Georgia administrative proceeding, and its communications to

10   Ultimate's customers related to such proceedings, are absolutely privileged under California

11   Civil Code § 47 (privileged publication "is one made . . . [i]n any . . . judicial proceeding, [or]

12   in any other official proceeding authorized by law"); see also Neville v. Chudacoff, 160 Cal.

13   App. 4th 1255, 1265 ("a communication is absolutely immune from any tort liability if it has

14   some relation to judicial proceedings"); Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990)

15   (the term "judicial proceedings" is broadly construed to include quasi-judicial proceedings,

16   including administrative proceedings).

17   TB Wines contends that the litigation privilege is applied to protect statements made

18   by parties to the litigation, counsel for parties, and witnesses, and that it is absolute in

19   nature, applying to all publications, irrespective of their maliciousness or of whether the

20   publications are true.

21   In determining whether the litigation privilege applies, the court considers whether

22   the statements were made in a judicial or a quasi-judicial proceeding, whether they were

23   made by litigants or other participants authorized by law, whether they were made to

24   achieve the objects of the litigation, and whether they had some connection or logical

25   relation to the action.  Silberg, 50 Cal. 3d at 212.  TB Wines argues that the statements at

26   issue satisfy all those factors.

27   In addition, TB Wines argues, even if the litigation privilege were found not to apply,

28   Ultimate still would not be able to show that it will prevail on the disputed counterclaims.

19

United States District Court

For the Northern District of California

1   With regard to the UCL claims, TB Wines contends that the first counterclaim for unfair

2   competition under § 17200 fails because Ultimate cannot establish that any of TB Wines'

3   conduct was unfair, fraudulent, or unlawful.  TB Wines asserts that the fourth counterclaim

4   for "statutory unfair competition," fails because Ultimate has failed to allege the statutory

5   basis for the counterclaim – and to the extent that the statutory basis is § 17200, it is a

6   duplicate of the first counterclaim and is defective for the reasons discussed above.

7       With regard to the fifth counterclaim for abuse of process, TB Wines argues that

8   Ultimate cannot prevail because this tort applies only to judicial process, not to

9   administrative proceedings, as stated in Stoltz v. Wong Comm'cns Ltd. P'ship, 25 Cal. App.

10  4th 1811, 1822-24 (1994), whereas the counterclaim is based wholly on the issuance and

11  service of subpoenas in the administrative proceeding.  Moreover, TB Wines asserts,

12  Ultimate cannot show that TB Wines ever served any subpoenas on any wineries; and that

13  the evidence shows that while it listed winery representatives on its potential witness list,

14  and communicated with individuals and some of the wineries, it never actually served any

15  subpoenas on winery witnesses because of the cost of bringing them  to Georgia.  TB

16  Wines contends that it issued subpoenas only to individuals affiliated with Ultimate and

17  Chalkboard.

18      With regard to the sixth counterclaim for intentional interference with contractual

19  relations, TB Wines argues that Ultimate cannot prevail because Ultimate fails to identify

20  the contracts at issue and fails to identify the third parties with whom Ultimate had

21  contractual relationships with which TB Wines allegedly interfered.  Similarly, with regard to

22  the seventh counterclaim for intentional interference with prospective economic advantage,

23  TB Wines asserts that Ultimate fails to identify the contracts at issue and also fails to allege

24  an independently wrongful act beyond the actual alleged interference itself.

25      In response, Ultimate contends that it is likely to prevail on its counterclaims.  First,

26  Ultimate argues, TB Wines' conduct is not protected by the litigation privilege, because TB

27  Wines' communications with Ultimate's customers are not "functionally related to" the

28  California litigation or the Georgia administrative proceeding and therefore do not fall within

1    the scope of Civil Code § 47(b).

2         Ultimate cites Rothman v. Jackson, 49 Cal. App. 4th 1134 (1996) for the proposition

3    that in order for the privilege to apply, the communication must bear a "functional

4    connection."  See id. at 1146 (the communicative act – whether it is a document filed with

5    the court, letter between counsel or an oral statement – must function as a necessary or

6    useful step in the litigation process and must serve its purpose).  This is a different thing

7    from saying that the communication's content need only be related in some way to the

8    subject matter of the litigation.  Id. at 1146 (emphasis in original).  Here, Ultimate argues,

9    the communications about which it complains were akin to "public mudslinging," which

10   Ultimate argues does not fall within the protection of § 47(b).

11        In addition, Ultimate contends that it has established that each of the disputed

12   counterclaims is legally sufficient and is supported by a sufficient prima facie showing of

13   facts to sustain a favorable judgment.

14        With regard to the UCL claims, Ultimate argues that TB Wines attempted to

15   wrongfully terminate Ultimate's distributorship agreement and move its business to

16   Chalkboard for its own business purposes.  Ultimate contends that the purpose of the

17   regulation of wine distributorships in Georgia is to insure fair competition, and that TB

18   Wines' unlawful attempt to terminate Ultimate is "designed to undermine the GDR

19   regulatory process and is plainly anti-competitive."  Similarly, Ultimate argues, TB Wines'

20   "acts of trade libel, and intentional interference with contract and prospective business

21   advantage are prohibited acts of judge made law under the 'unlawful' prong" of § 17200.

22        With regard to the fifth counterclaim for abuse of process, Ultimate argues that TB

23   Wines is wrong when it asserts that an abuse of process claim cannot arise in the context

24   of a regulatory proceeding, and asserts that the abuse of process claim should be

25   governed by Georgia law, not California law, because Georgia is where the administrative

26   proceeding is located and where the tort occurred.  Ultimate contends that under Georgia

27   law, a regulatory proceeding provides a basis for an abuse of process claim.  In support,

28   Ultimate cites Dixie Broadcasting Corp. v. Rivers, 209 Ga. 98, 105, 70 S.E. 2d 734, 740

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  (Ga. 1952) (action to revoke FCC permit involving false statements).

2      Ultimate asserts further that it is likely to prevail in the abuse of process claim.

3  Ultimate contends that TB Wines caused subpoenas to be issued in the Georgia

4  proceeding, and informed Ultimate that it would require the appearance of more than a

5  dozen of Ultimate's winery clients from California in the Georgia proceeding, and then used

6  the "pretext" of those subpoenas to contact Ultimate's winery clients and convince them not

7  to do business with Ultimate.

8      With regard to the sixth and seventh counterclaims for intentional interference with

9  contractual relations and prospective business advantage, Ultimate argues that it has

10  "probable cause" to support the claims of "trade libel and interference," because TB Wines

11  told its restaurant and retail customers in Georgia that Ultimate had been terminated by TB

12  Wines, and that Ultimate's financial condition and payment of bills was not to be trusted.

13  Ultimate also asserts that TB Wines' "statements" were about Ultimate's "specific business

14  practices" and were not made in connection with a public issue or an issue of public

15  importance.  Ultimate does not respond to the arguments raised by TB Wines' motion with

16  regard to the interference claims.

17      Finally, Ultimate asserts that it has established "probable cause" for its "trade libel

18  and defamation" counterclaim.[4]  Ultimate claims that it has established each of the

19  elements of a "trade libel, defamation" claim against TB Wines, as the evidence shows that

20  TB Wines' representatives told its restaurant and retail customers in Georgia that Ultimate

21  had been terminated by TB Wines, and that Ultimate's financial condition and payment of

22  bills was not to be trusted.  Ultimate claims that these false statements tended to injure

23  Ultimate in its profession and had nothing whatever to do with protected petitioning activity.

24      The court finds that Ultimate has failed to establish that it is likely to prevail on its

25  counterclaims.  First, the litigation privilege absolutely bars the counterclaims.  Ultimate has

26  failed to rebut TB Wines' showing that its alleged communications with clients and

27  _____

28      [4]  It is not clear which counterclaim this argument refers to.  Ultimate discusses "trade
libel, defamation" in the section in which it discusses the interference counterclaims.

United States District Court

For the Northern District of California

1   customers relate directly to its litigation activity, including investigating its claims and

2   preparing for the Georgia administrative proceeding.

3        In addition, the court finds that Ultimate has failed to establish that it is likely to

4   prevail on the disputed counterclaims.  With regard to the first and fourth counterclaims,

5   Ultimate has shown that it is likely to prevail under § 17200, which prohibits "any unlawful,

6   unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

7        To prevail under the "unfair" prong, Ultimate must establish harm to competition, not

8   merely harm to itself.  Cel-Tech Comm'cns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.

9   4th 163, 187 (1999).  Here, however, Ultimate alleges no threat or harm to competition, and

10  its opposition to the motion identifies no such allegation.  Rather, Ultimate asserts merely

11  that TB Wines' "unlawful attempt to terminate Ultimate [though the process mandated by

12  the Georgia Department of Revenue] is designed to undermine the GDR regulatory

13  process and is plainly anti-competitive."  The fact that Ultimate opposes TB Wines' wish to

14  terminate the distributorship relationship is not sufficient to establish that TB Wines has

15  engaged in anticompetitive behavior.

16       Nor has Ultimate alleged facts showing that TB Wines engaged in any fraudulent

17  conduct.  Under Federal Rule of Civil Procedure 9(b), a plaintiff pleading a claim of fraud, or

18  any claim that is "grounded in fraud" must "state with particularity the circumstances

19  constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  That is, the plaintiff must set forth with

20  particularity the "who, what, when, where, and how of the misconduct charged."  Vess v.

21  Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  The plaintiff must also allege

22  the misrepresentations themselves with particularity.  Moore v. Kayport Package Exp., Inc.,

23  885 F.2d 531, 540 (9th Cir. 1989).  Here, the first and fourth causes of action do not comply

24  with Rule 9(b), and Ultimate has provided no evidence to support a claim of fraudulent

25  conduct.

26       Finally, the UCL's "unlawful" prong "borrows violations of other laws . . . and makes

27  those unlawful practices actionable under the UCL.  Thus, a violation of another law is a

28  predicate for stating a cause of action under the UCL's unlawful prong."  Berryman v. Merit

United States District Court

For the Northern District of California

1   Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (2007) (quotation and citation omitted).

2   Conversely, where a plaintiff cannot state a claim under the "borrowed" law, it cannot state

3   a UCL claim either.  See, e.g., Ingels v. Westwood One Broadcasting Servs., Inc., 129 Cal.

4   App. 4th 1050, 1060 (2005).

5         Here, Ultimate provides only the conclusory assertion that TB Wines' "acts of trade

6   libel, and intentional interference with contract and prospective business advantage are

7   prohibited acts of judge made law under the 'unlawful' prong" of § 17200.  As Ultimate has

8   not established that it is likely to prevail under the intentional interference counterclaims,

9   and has not pled a counterclaim for trade libel, it has not established that it is likely to

10  prevail under the "unlawful" prong of § 17200.

11        With regard to the fifth counterclaim for abuse of process, the court finds that

12  Ultimate has not established that it is likely to prevail on this claim, regardless of whether it

13  is considered under Georgia law (as Ultimate argues) or under California law.  Under

14  Georgia law, "[m]alicious abuse of civil process . . . lies when the plaintiff in a civil

15  proceeding wilfully misapplies process of the court in order to obtain an objective such

16  process was not intended by law to achieve."  Medoc Corp. v. Keel, 152 Ga. App. 684, 686,

17  263 S.E. 2d 543, 545 (Ga. App. 1979).

18        The essential elements of a claim of abuse of process are an ulterior purpose to

19  employ the process for a purpose for which it was not designed, and a wilful act in the use

20  of the process not proper in the regular conduct of the proceeding.  Id.; Ostroff v. Coyner,

21  187 Ga. App. 109, 112, 369 S.E. 2d 298, 302 (Ga. App. 1988); see also Cooper v. Pub.

22  Finance Corp., 146 Ga. App. 250, 254, 246 S.E. 2d 684, 688 (Ga. App. 1978) (critical

23  element "is that the action lies for 'improper use of process after it has been issued, not for

24  maliciously causing it to issue.'") (citation omitted).

25        Here, Ultimate asserts that TB Wines caused subpoenas to be issued in the

26  administrative proceeding, and informed Ultimate's counsel that it would require the

27  appearance of more than a dozen of Ultimate's winery clients from California.  Ultimate

28  claims that TB Wines used the "pretext" of those subpoenas to contact Ultimate's winery

United States District Court
For the Northern District of California

1   clients and convince them not to do business with Ultimate.  According to Ultimate, "[t]he

2   only reasonable inference" is that TB Wines "offered inaccurate information about

3   Ultimate's challenge of the release forms in the Georgia proceeding," and that "[t]he

4   unavoidable conclusion" is that TB Wines told Ultimate's clients that Ultimate "would not

5   and has not honored a pre-release form without explaining the circumstances."

6       TB Wines provides evidence, however, showing that it never served a subpoena on

7   any of Ultimate's clients or customers, and Ultimate has provided no admissible evidence

8   to the contrary.  Thus, Ultimate's argument regarding TB Wines use of "the pretext of the

9   subpoenas" is without basis.  Nor is there any evidence in the record that TB Wines acted

10  with an "ulterior purpose" or that it committed an improper act in the use of the process.

11  Moreover, there is no showing that the subpoenas were obtained in bad faith.  The hearing

12  officer, who issued the subpoenas at TB Wines' request, was authorized to do so as part of

13  the regular prosecution of the administrative proceedings.  Under Georgia law, the

14  issuance of subpoenas is not considered to be abuse of process.  See Karpowicz v. Hyles,

15  247 Ga. App. 292, 297, 543 S.E. 2d 51, 55 (Ga. App. 2000).

16      With regard to the sixth and seventh counterclaims for intentional interference,

17  Ultimate has not established that it is likely to prevail on those claims.  To state a claim for

18  intentional interference with contractual relations, Ultimate must allege facts showing the

19  existence of a contract between Ultimate and a third party; TB Wines' knowledge of this

20  contract; intentional acts by TB Wines designed to induce a breach or disruption of the

21  contractual relationship; actual breach or disruption of the contractual relationship; and

22  resulting damage.  See Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th 26, 55

23  (1998).

24      To state a claim for intentional interference with prospective business advantage,

25  Ultimate must allege facts showing an economic relationship between itself and some third

26  party, with the probability of future economic benefit to Ultimate; TB Wines' knowledge of

27  the relationship; intentional acts on the part of TB Wines, designed to disrupt the

28  relationship; the actual disruption of the relationship; and economic harm to Ultimate

United States District Court

For the Northern District of California

1    proximately caused by the acts of TB Wines.  See Pacific Gas & Elec. Co. v. Bear Stearns

2    & Co., 50 Cal. 3d 1118, 1126 (1990).  In addition, Ultimate must plead that TB Wines'

3    interference was "wrongful by some measure beyond the fact of the interference itself."

4    Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995).

5         Here, in the sixth cause of action, Ultimate alleges that TB Wines, Chalkboard, and

6    Kaplan disrupted Ultimate's performance of its contracts with unidentified "Clients and

7    Customers" by wrongfully subpoena'ing the clients, by making false statements to the

8    clients and customers about the reasons for Ultimate's inability to provide products and its

9    trustworthiness, and by refusing to provide Ultimate with requirements of TB Wines'

10   products.  Ultimate asserts that TB Wines, Chalkboard, and Kaplan intended to disrupt

11   Ultimate's contracts so that they could sell TB Wines' products directly to Ultimate's

12   customers, and so that Chalkboard could be appointed a distributor for Ultimate's clients.

13        In the seventh cause of action, Ultimate alleges that TB Wines, Chalkboard, and

14   Kaplan intentionally interfered with the economic relationship between Ultimate and

15   unidentified "Clients and Customers," and between Ultimate and prospective clients and

16   customers, "by engaging in the wrongful conduct as alleged herein."

17        In its opposition to the present motion, Ultimate asserts that it has "established each

18   of the elements" of its intentional interference claims.  Ultimate contends that TB Wines'

19   representatives "told its restaurant and retail customers in Georgia that Ultimate was

20   terminated by [TB Wines], and that Ultimate's financial condition and payment of bills was

21   not to be trusted."  However, at this stage of the inquiry, Ultimate is required to show that it

22   is likely to prevail on the interference claims.  The only evidence cited by Ultimate is the

23   reference in ¶ 9 of the Owens Declaration to the confidential settlement agreement in the

24   Georgia lawsuit filed by Ultimate against Kaplan (copy of agreement not attached to

25   declaration); and the inadmissible hearsay and speculation of ¶¶ 10-11 of the Owens

26   Declaration.

27        With regard to the purported "trade libel and defamation" counterclaim, the court is

28   unable to locate it in the pleading.  To state a claim for trade libel, the plaintiff must allege

26

that the defendant published a statement; the statement tended to disparage the plaintiff's product or property; the statement was provably false; the defendant acted with knowledge that the statement was false or with reckless disregard for its falsity; and the statement caused specific pecuniary damage to the plaintiff.  See 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 645; Melaleuca, Inc. v. Clark, 66 Cal. App. 4th 1344, 1360-62 (1998).  The tort of defamation involves a publication that is false, defamatory, and unprivileged, and that has a natural tendency to injure or that causes special damage. Taus v. Loftus, 40 Cal. 4th 683, 720 (2007).

Ultimate alleges facts relating to some of these elements here and there in the counterclaims, but there is no specifically pled counterclaim for trade libel or defamation, nor has Ultimate shown that it is likely to prevail on such a claim.  In addition, to the extent that the "publication" was made in connection with the present litigation or the administrative proceeding in Georgia, it would subject to the litigation privilege.

**CONCLUSION**

In accordance with the foregoing, the court finds that the motion to strike the first, fourth, fifth, sixth, and seventh counterclaims under the anti-SLAPP statute must be GRANTED.

**IT IS SO ORDERED.**

Dated: January 22, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge